**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

JAMIE SHAWN MCCALL,                                      PLAINTIFF
ADC # 610019

V.                              CASE NO. 4:14CV00212 SWW/BD

MATTHEW TUCKER, et al.                                   DEFENDANTS

**RECOMMENDED DISPOSITION**

## I.   Procedure for Filing Objections:

This Recommended Disposition ("Recommendation") has been sent to United

States District Judge Susan Weber Wright.  Any party to this case may file written

objections with the Clerk of Court within fourteen (14) days of the filing of this

Recommendation.  Objections must be specific and must include the factual or legal basis

for the objection.

If no objections are filed, Judge Wright can adopt this Recommendation without

independently reviewing the record.  Also, by not objecting, you may waive any right to

appeal questions of fact.

## II.  Background:

Plaintiff Jamie Shawn McCall, now an Arkansas Department of Correction

("ADC") inmate, filed this lawsuit pro se under 42. U.S.C. § 1983, in part, complaining

about treatment he received from Conway Police Officers Matthew Tucker and James

Mitchell.  (Docket entry #2)  Specifically, Mr. McCall claims that after he was arrested,

Conway patrol officer Matthew Tucker used excessive force by restraining him while paramedics were treating his injuries at the scene of his arrest.  Mr. McCall also claims that Defendants Mitchell and Tucker acted with deliberate indifference to his serious medical needs by telling personnel at the emergency room not to prescribe narcotic pain medication because he was not allowed to take it while in the Faulkner County Detention Center ("FCDC").  Finally, Mr. McCall claims that Defendant Mitchell acted with deliberate indifference when he failed to give his hospital discharge papers to officials at the FCDC.

Defendants Tucker and Mitchell have now moved for summary judgment.  (#42)  Mr. McCall has responded, and the Defendants have replied.  (#48, #49)  Based on the evidence presented, the Court recommends that the motion for summary judgment (#42) be GRANTED.

## III.    Discussion:

A.      Summary Judgment Standard

Summary judgment means that the court rules in favor of a party without the need for a trial.  A party is entitled to summary judgment if the evidence, viewed in the light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute as to any fact that is important to the outcome of the case.  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

Here, Defendant's Mitchell and Tucker have moved for summary judgment, so they must produce evidence showing that there is no real dispute about any fact that is important enough to make a difference in how the case is decided.  If they meet this burden, Mr. McCall must respond by producing evidence that contradicts Defendants' evidence.  *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  If Mr. McCall does not come forward with enough evidence to show that there is a real dispute, the Court must grant summary judgment in favor in favor of Defendants; and there will be no trial.  *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

B.      Mr. McCall's Version of the Facts

On August 9, 2013, Mr. McCall was packing to move out of his girlfriend's apartment when her uncle, mother, and aunt showed up.  According to Mr. McCall, the uncle attacked him and beat him up, causing serious injury.  (#44-2 at pp. 14, 16, 23-24; #48 at p. 7)  After the uncle left the apartment, Mr. McCall went to his car to find his cell phone, then returned to the apartment.  (#44-2 at p. 17)  When Mr. McCall heard sirens, he left the apartment and was taken into custody.  (#44-2 at pp. 26-27; #48 at p. 1)  As a result of the incident, Mr. McCall's parole was revoked, and he was charged with aggravated assault.  (#44-1, #48 at p. 7, #61 at pp. 15-19)

Defendant Tucker escorted Mr. McCall to the paramedic, and stayed with him while he was treated.  (#44-2 at p. 27; #48 at p. 4; #61 at p. 8)  Mr. McCall was handcuffed behind his back while being treated for his injuries.  (#48 at p. 4)  He kept

trying to sit up when being pushed back onto his hands, and when the paramedic applied pressure to the laceration on the top of his fractured eye socket, he tried to roll out of the paramedic's way.  (#44-2 at p. 28, #48 at p. 4)  He recalls crying and screaming.  (#48 at p. 4)

According to Mr. McCall, while being treated by the paramedic, Defendant Tucker grabbed him by the throat with enough force to pin his head to the ambulance and choked him to the point that he could not breath.  (#48 at p. 4, #44-2 at pp. 28-29)   The next thing he remembers is he was in a patrol car.  (#44-2 at p. 32)

Mr. McCall was taken to Conway Regional Medical Center for treatment.  He was diagnosed with an orbital fracture in his right eye, an injury to his head, and a laceration on his skin.  (#44-3 at 71, 85)  A CT scan also revealed a prior nasal bone deformity that was stable.  (#44-3 at p. 71)  He was given Vicodin while at the hospital but was not discharged with a prescription for pain medication. (Complaint at paragraph 6, (#44-3 at pp. 49, 59, 85))

Mr. McCall claims that Defendant Mitchell, at the direction of Defendant Tucker, advised hospital staff that Mr. McCall could not be given any prescription pain medication because FCDC would not permit him to have it.   (#48 at pp. 7-8)  Mr. McCall alleges that because he did not have prescription pain medication, he suffered extreme pain.  (#48 at p. 8)

4

Mr. McCall was discharged to the custody of the Conway Police Department and was taken to FCDC.  (#44-3 at p. 59)  Mr. McCall's discharge instructions noted that he was to follow up with two doctors.  (#44-3 at p. 59)  Defendant Mitchell did not give the discharge instructions to staff at FCDC.  On August 14, 2013, Mr. McCall notified officials at the Faulkner County Detention Center that he required follow-up care for his injuries.  (#48 at pp. 9, 67, 69)

A nurse gave Mr. McCall a prescription for ibuprofen on August 15, 2013, and dispensed ibuprofen to Mr. McCall beginning August 16, 2013.  (#54-1 at pp. 8-9)  On August 20, 2014, when visiting the hospital after a separate altercation, Joshua Post, M.D., ordered a CT scan of Mr. McCall's facial bones and prescribed hydrocodone for Mr. McCall to take at the FCDC.  (#44-3 at p. 43, #48 at pp. 49-50)  On September 10, 2013, Mr. McCall was examined at the ENT Center of Conway.  (#48 at pp. 46-48)

C.    Qualified Immunity

Analyzing a claim of qualified immunity involves a two-step inquiry.  *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012).  In one step, the Court must determine whether the facts demonstrate a deprivation of a constitutional right.  *Id*. (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)).  In the other step, the Court must determine whether the implicated right was clearly established at the time of the alleged deprivation. *Id*. (citing *Parrish*, 594 F.3d at 1001).

In considering those steps at the summary judgment phase, a district court is required to view the genuinely disputed facts in the light most favorable to the non-moving party.  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769 (2007); *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007).

1.    Excessive Force Claim Against Defendant Tucker

Mr. McCall claims Defendant Tucker used excessive force against him after his arrest when he restrained him to be treated by the paramedic and choked him until he passed out.  (#49-3 at pp. 31-32)  The Court must evaluate Mr. McCall's claim of excessive force under the reasonableness standard of the Fourth Amendment.  *Montoya v. City of Flandreau*, 669 F.3d 867, 870 (8th Cir. 2012) (citations omitted).  The test for establishing a constitutional violation under the fourth amendment's guarantee against excessive force is whether the amount of force used was objectively reasonable under the particular circumstances.  *Id*. at 871.

To determine whether the force used was reasonable, this Court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  *Id*.  In reviewing whether the use of force was reasonable, the Court must consider the totality of the circumstances, including

the severity of the crime, the danger the suspect posed to the officer or others, and whether the suspect was actively resisting arrest or attempting to flee. *Id*. The degree of injury suffered, to the extent "it tends to show the amount and type of force used," is also relevant. *Id*. (quoting *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011)).

Defendant Tucker's version of the events giving rise to Mr. McCall's excessive-force claim varies from the events described by Mr. McCall. According to Defendant Tucker, on August 9, 2013, he and other Conway Police Department officers were dispatched to South German Lane to respond to a report of a fight between two men, one of whom had a razor knife. (#44-1 at p. 5, #44-6, #48 at p. 14) While in route, dispatch advised responding officers that the two men had stopped fighting, but the male was fighting with a few women, and the 911 caller reported seeing him with a machete. (#44-6) Officers requested that dispatch send paramedics to treat anyone who might be injured. (#44-6) Upon arrival at the scene, officers were told that the male had entered apartment H-10. (#44-6) Mr. McCall was arrested without resistence, and Defendant Tucker escorted him to the paramedic. (#44-1 at p. 5)

Paramedic, Jarrod Ritchie reported to the scene. (#44-4) According to Mr. Ritchie, Mr. McCall was sitting on the bumper of the ambulance with his hands handcuffed behind his back. (#44-4 at p. 1) Mr. McCall showed signs of a blunt trauma, oral swelling to his mouth and was bleeding. (#44-4 at p. 1) Mr. Ritchie states that while he was attempting to treat Mr. McCall, he was aggressive, violent, and combative. (#44-4

at p. 1)  Mr. Ritchie further testifies that at no time did he see any officer with the Conway Police Department touch or restrain Mr. McCall in any way, other than the handcuffs.  (#44-4 at p. 2)

Defendant Tucker reports that Mr. McCall was aggressive while being treated by the paramedic.  (#48 at p. 18)  Defendant McCall states that Mr. Tucker was screaming at the victim, would not stop yelling, kept trying to get up from the back of the ambulance, and would not let the paramedics treat his injuries.  (#48 at pp. 22, 23)  Defendant Tucker denies grabbing Mr. McCall by the throat and denies that he was unconscious while being carried from the ambulance to the police unit.  (#48 at pp. 12-13, 23)

In the incident report completed by Conway Police Officer Larry Lute, Officer Lute that states Mr. McCall was "uncooperative" with the paramedics.  (#44-1 at p. 4) Mr. McCall admits that he was "rolling out of the way" from the paramedic due to pain. (#44-2 at p. 28)  And at his deposition, Mr. McCall testified that Defendant Tucker used force to restrain him so that his eye could be treated.  (#44-2 at p. 28)

None of the records from Mr. McCall's medical treatment on the date of the incident indicate that he complained of pain to his neck.  (#44-3 at pp. 45-75)  To the contrary, the records indicate that Mr. McCall specifically denied neck pain and, on examination, his neck was non-tender and he had normal range of motion.  (#44-3 at pp. 57-58)

Considering all of the evidence, no reasonable juror could find Mr. McCall's statement that Defendant Tucker choked him to the point of passing out credible. (#44-3, #44-4 at p. 2, #61 at p. 4, 12) Defendant Tucker, Officer Lute, and Mr. Ritchie all report that Mr. McCall was aggressive and uncooperative.

Assuming Mr. McCall's testimony that Defendant Tucker restrained him so that the paramedic could apply a bandage is true, this amount of force is not excessive under the circumstances. When Defendant Tucker arrived at the scene, he had heard from the dispatcher that Mr. McCall had pulled a razor knife on the 911 caller. Mr. McCall was later charged with aggravated assault. While Mr. McCall did not resist arrest, he became aggressive when being treated by the paramedic. Mr. McCall admits to crying, screaming, and pulling away. (#48 at pp. 3-4, 6)

Under the circumstances, it was reasonable for Defendant Tucker to restrain Mr. McCall to prevent injury to himself and to the paramedics as well as to allow for treatment of Mr. McCall's injuries. Consequently, the Court cannot conclude Defendant Tucker violated any of Mr. McCall's clearly established rights, and he is entitled to judgment as a matter of law on the excessive force claim.

2.     Deliberate Indifference

Mr. McCall claims that Defendants Tucker and Mitchell were deliberately indifferent to his serious medical needs when Defendant Mitchell, at Defendant Tucker's direction, advised emergency room staff not to prescribe narcotic pain medication for Mr.

McCall to take to FCDC.  Further he alleges Defendant Mitchell was deliberately indifferent by failing to give FCDC his hospital discharge papers that noted the need for follow-up medical appointments.

Determining whether an official was deliberately indifferent to an inmate's medical needs involves both objective and subjective analyses.  *Scott v. Benson*, 742 F.3d 335, 339–40 (8th Cir. 2014).  To prevail, Mr. McCall first must establish that he suffered from an objectively serious medical need.  *Id*. at 340.  Because Defendants concede that Mr. McCall had a serious medical need, the Court will turn to the subjective component of the deliberate-indifference standard.

For Defendants to be liable, Mr. McCall must show that the Defendants "actually knew of but deliberately disregarded [his] serious medical need."  *Id*.  This showing requires a mental state "akin to criminal recklessness."  *Id*. (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).  Mr. McCall must show "more than negligence, more even than gross negligence."  *Fourte v. Faulkner County, Ark*., 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).  He must show that the Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."  *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir. 1997).

Here, there is no evidence to establish intentional maltreatment or refusal to provide essential care.  Defendants escorted Mr. McCall to the paramedic, then to the

hospital for treatment.  At the hospital, Mr. McCall was given pain medication.  Even assuming that Defendants advised hospital staff not to prescribe narcotic pain medication, this would not amount to more than negligence.  Accordingly, Defendants are entitled to summary judgment.

Mr. McCall also alleges that Defendant Mitchell failed to give FCDC his discharge instructions.  Even if true, this conduct is, at most, negligent.  Medical staff at FCDC were aware of Mr. McCall's injuries at intake. (#48 at pp. 65-69)  After transporting Mr. McCall to FCDC, Defendant Mitchell had no further contact with or responsibility for Mr. McCall.  Moreover, the record indicates that on August 14, 2013, only five days after the incident, Mr. McCall used the FCDC grievance process to advise FCDC staff of his need to see a surgeon.  (#48 at p. 15)  Mr. Mitchell's actions do not amount to deliberate indifference.

Mr. McCall has not established the deprivation of a constitutional right, and Defendants are entitled to summary judgment on the basis of qualified immunity.

D.      Remaining Defendants

Mr. McCall also named Tommy Balentine and Larry Lute[1] as defendants, claiming that these Defendants, along with Defendant Tucker, falsely arrested him, coerced witnesses into giving false statements, and improperly gathered DNA evidence in connection with the assault charges brought against him in Faulkner County Circuit

---

[1]Defendants Lute and Balentine were not served with a summons. (#5)

Court.  (#2, #5 at pp. 3-4)  *State v. McCall*, CR13-845 (Faulkner County Circuit Court, Second Division) www.caseinfo.aoc.arkansas.gov.

At the time the Court screened Mr. McCall's complaint, his criminal case was still pending.  The Court determined that, under *Younger v. Harris*, 401 U.S. 37, 43-45 (1971), it should abstain from hearing false-arrest, witness- and evidence-tampering claims.  (#5 at pp. 3-4)  Mr. McCall has now been convicted of the charges.  *State v. McCall*, CR13-845 (Faulkner County Circuit Court, Second Division) www.caseinfo.aoc.arkansas.gov.

In order for Mr. McCall to pursue a federal lawsuit against these Defendants, he must have his conviction reversed.  See 28 U.S.C. § 2254; *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  Accordingly, the Court recommends that the case be administratively terminated until such time as Mr. McCall meets the pre-requisites to permit the Court to hear these claims.  If his conviction be reversed, Mr. McCall should be permitted to file a motion to reopen the case.

IV.   **Conclusion**:

The Court recommends that the Defendants' motion for summary judgment (#42) be GRANTED.  Mr. McCall's excessive force claim against Defendant Matthew Tucker and his deliberate indifference claims against Defendants Matthew Tucker and James Mitchell should be DISMISSED, with prejudice.  The Court also recommends that the Court administratively terminate the case.

DATED this 20th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE